IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN McKINLEY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:14-cv-00155 |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| STEVE KONDRASKY, Police Officer, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Sean McKinley ("Plaintiff") filed this civil rights lawsuit against three police officers employed by the City of McKeesport, Pennsylvania -- Steve Kondrasky ("Kondrasky"), Nicholas Matthews ("Matthews"), and James Goss ("Goss") -- based on the Defendants' alleged use of excessive force in connection with Plaintiff's arrest on May 10, 2013. Presently pending before the Court is the Defendants' motion for summary judgment (ECF No. 38). Because Plaintiff has failed to respond to this motion or otherwise prosecute his claims after being given ample opportunity to do so, the Court will dismiss this action with prejudice.

### I. BACKGROUND FACTS[1]

On May 10, 2013 at approximately 1:00 a.m., Plaintiff was driving a black Jeep Grand Cherokee in the area of Evans Avenue in the City of McKeesport, Pennsylvania. (SUMF ¶1.) Kondrasky was on patrol duty in the same vicinity, wearing his police uniform and operating a marked police unit. (*Id*. at ¶¶ 2-3.) As Plaintiff's Cherokee traveled down Evans Avenue, Kondrasky observed that the vehicle's rear lighting was malfunctioning. (*Id*. at ¶ 4.) Kondrasky

---

[1] The following background facts are taken primarily from Defendants' unopposed Statement of Undisputed Material Facts ("SUMF," ECF No. 40). Because Plaintiff has failed to respond to or otherwise oppose any of the averments set forth in the Defendants' Statement of Undisputed Material Facts, the Defendants' averments are deemed admitted. *See* LCvR 56(C)(1)(a) and 56(E).

1

activated his cruiser's lights and conducted a traffic stop of the Cherokee at the eastbound on-ramp to the Duquesne-McKeesport Bridge. (*Id*. at ¶ 5.) Matthews and Goss, who were also in uniform, arrived promptly on the scene to provide backup support. (*Id*. at ¶6.)

After approaching Plaintiff's vehicle, Kondrasky requested Plaintiff's driver's license, registration and vehicle insurance information. (SUMF ¶¶ 7, 9.) While Plaintiff was gathering these items, Kondrasky detected the odor of marijuana coming from inside the vehicle. (*Id*. at ¶10.) Matthews and Goss signaled to Kondrasky that they also detected marijuana. (*Id*. at ¶11.) Kondrasky informed Plaintiff that he smelled marijuana and asked Plaintiff to step out of the vehicle. (*Id*. at ¶12.) Plaintiff, who was the only occupant in the Cherokee, complied. (*Id*. at ¶¶ 8, 13.)

Kondrasky then conducted a frisk of Plaintiff and discovered a bag of marijuana in Plaintiff's pocket. (SUMF ¶¶ 14-15.) After advising Plaintiff that he was under arrest for possession of a controlled substance and handcuffing him, Kondrasky conducted a search incident to arrest and discovered a bag of cocaine in Plaintiff's right watch pocket. (*Id*. at ¶¶ 16-17.) Goss then took Plaintiff to the rear of the vehicle while Kondrasky and Matthews conducted an inventory search of the Cherokee, pursuant to their department policy. (*Id*. at ¶¶ 18-19.) As Kondrasky and Matthews performed their search, Goss observed that Plaintiff began sweating profusely and breathing heavily. (*Id*. at ¶¶ 20-21.) Shortly thereafter, Plaintiff, who had been sitting on the vehicle's rear bumper, began to run from the officers with his hands still cuffed behind his back. (*Id*. at ¶¶ 20, 22.) Kondrasky and Matthews felt the vehicle move, and Goss yelled that Plaintiff was fleeing the scene. (*Id*. at ¶¶ 23-24.) Plaintiff maintains that he feared for his life because it was 1:30 a.m. and there was no one present to witness what the police officers were doing during the traffic stop. (*Id*. at ¶ 26.)

As Plaintiff began running down the on-ramp twoard East Fifth Street, his pants started to fall down, causing him to trip and fall to the ground. (SUMF ¶¶ 25, 27-28.) He was already on the ground by the time that Kondrasky and Matthews caught up to him. (*Id*. at ¶ 29.) According to Plaintiff, an unknown officer jumped on him while he was still on the ground. (*Id*. at ¶ 30.) Plaintiff acknowleges that he "blacked out" at that point and does not know whether an officer struck him. (*Id*. at ¶31.) Kondrasky and Matthews then picked Plaintiff up and placed him inside a patrol unit while they completed the inventory search of the Cherokee. (*Id*. at ¶ 32.) During the course of their search, the officers recovered a digital scale, a marijuana cigar, and a loaded 12-gauge shotgun wrapped in a t-shirt underneath a seat. (*Id*. at ¶33.)

Plaintiff was subsequently taken to the police station where he complained of pain and defecated on himself. (SUMF ¶34.) Thereafter, he was transported to McKeesport Hospital for medical attention. (*Id*. at ¶ 35.) Plaintiff has not produced any medical records or other evidence relative to his treatment or injuries, but he alleges in his complaint that the officers' conduct caused "serious injury, loss of lung, and permanent disability." (Compl. ¶ IV(C), ECF No. 5.)

Plaintiff was charged with escape, persons not to possess a firearm, resisting arrest, possession of a controlled substance, possession or distribution of marijuana, and possession of drug paraphernalia. (SUMF ¶ 36.) Following a jury trial in the Allegheny Court of Common Pleas, Plaintiff was convicted on all charges except for resisting arrest. (*Id*. at ¶ 37.)

## II. PROCEDURAL HISTORY

On February 4, 2014, Plaintiff commenced this *pro se* civil action with the filing of a motion for leave to proceed *in forma pauperis*. His sole legal theory is that Defendants Kondrasky, Matthews and Goss violated his federal constitutional rights by using excessive force while regaining control of him after he attempted to escape. Plaintiff maintains that the

3

Defendants knowingly, intentionally, and willfully caused him physical harm, for which he seeks judgment in the amount of $75,000 per Defendant, along with payment of his medical expenses, the costs of this action, and a payment of $10,000 per day for pain and suffering. (Compl. ¶ IV(C); *id*. at ¶ VI.)

Defendants filed their Answer and Affirmative Defenses to the complaint on August 24, 2015 (ECF No. 36). Thereafter, this Court entered a case management order (ECF No. 37) directing Defendants to serve Plaintiff with their Rule 26(a)(1) initial disclosures, along with all incident reports, police reports, or similar documents, on or before September 30, 2015. Plaintiff was directed to notify the Court by October 16, 2015 of any additional discovery he deemed necessary for the prosecution of his case. At no time did Plaintiff request additional discovery.

On November 2, 2015, Defendants filed the pending motion for summary judgment (ECF No. 38) and supporting documents (ECF Nos. 39, 40, 41). Defendants' primary argument is that their use of force, if any, was objectively reasonable; to the extent it was not, Defendants maintain that they are protected by the doctrine of qualified immunity.

Pursuant to the Court's November 3, 2015 briefing order (ECF No. 42), Plaintiff's response and related filings were due on or before December 2, 2015. In its briefing order, the Court provided explicit instructions to Plaintiff concerning his obligations under Federal Rule of Civil Procedure 56 and Local Rule 56.C. In addition, Plaintiff was expressly advised that failure to respond to the Defendants' motion could result in judgment being entered against him or a dismissal of the case for failure to prosecute.

After Plaintiff failed to file any response, this Court entered an order (ECF No. 44) directing Plaintiff to show cause, no later than May 10, 2016, why his claims should not be

dismissed for failure to prosecute. To date, Plaintiff has failed to comply with the Court's show cause order.

### III. DISCUSSION

Rule 41(b) of the Federal Rules of Civil Procedure addresses the involuntary dismissal of an action or a claim. It provides that:

> [i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule -- except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 -- operates as an adjudication on the merits.

"Under Rule 41(b), a district court has authority to dismiss an action sua sponte if a litigant fails to prosecute or to comply with a court order." *Qadr v. Overmyer*, No. 15-3090, --- F. App'x ---, 2016 WL 873784, at *1 (3d Cir. Mar. 8, 2016) (citing Fed.R.Civ.P. 41(b)); *see also Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 871 (3d Cir. 1994) (recognizing that a court can dismiss a case *sua sponte* under Rule 41(b)) (discussing *Link v. Wabash R.R.*, 370 U.S. 626, 632 (1962)).

In deciding whether to dismiss a case for failure to prosecute, courts consider several factors, including: (1) the extent of the party's personal responsibility; (2) the prejudice to the opposing party caused by the failure to meet scheduling orders and respond to discovery; (3) any history of dilatoriness; (4) whether the conduct of the party or the attorney has been willful or in bad faith; (5) whether effective alternative sanctions are available; and (6) the merit of the claim or the defense. *Qadr*, 2016 WL 873784, at *1 (citing *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir.1984)). "There is no 'magic formula' or 'mechanical calculation' for balancing the *Poulis* factors, and a District Court need not find all of the factors satisfied in order to dismiss a complaint." *Id*. (citing *Briscoe v. Klaus*, 538, F.3d 252, 263 (3d Cir. 2008)). The

decision to dismiss for failure to prosecute is committed to the district court's sound discretion. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 230 (3d Cir.1998) (reviewing the district court's dismissal for failure to prosecute pursuant for abuse of discretion), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City School Dist.*, 550 U.S. 516 (2007).

Based on its review of the aforementioned *Poulis* factors, this Court concludes that a dismissal of the instant civil action is warranted. The Court's analysis of each factor follows.

### A. The Extent of the Party's Personal Responsibility

Plaintiff is proceeding in this matter *pro se*. There is no indication that his current address of record is inaccurate or that he otherwise failed to receive the Court's prior briefing and show-cause orders. Plaintiff is therefore solely responsible for his failure to comply with the Court's directives.

### B. A History of Dilatoriness

Defendants filed their motion for summary judgment and related materials on November 2, 2015. Plaintiff was then given one months' time in which to file his opposition materials but did not do so, nor did he articulate any just cause for an extension of the briefing deadline. On April 27, 2016, nearly five months after Plaintiffs' summary judgment response was due, this Court ordered Plaintiff to show cause why the instant action should not be dismissed for lack of prosecution. Plaintiff was given thirteen (13) days in which to respond to the Court's order, but he again failed to do so. In this Court's estimation, Plaintiff's history of dilatoriness demonstrates that he does not intend to proceed with this case in a timely fashion, if at all.

### C. Prejudice to the Adversary

In *Poulis*, prejudice was found to exist where the adversary was required to prepare and file motions to compel answers to interrogatories. In this case, Defendants have been prejudiced

6

to the extent that Plaintiff's noncompliance with the Court's orders has impeded the Defendants' ability to obtain a timely adjudication of the merits of their motion.

      D. <u>Whether the Party's Conduct Was Willful or in Bad Faith</u>

As noted, there is no indication on this record that Plaintiff's failure to comply with court orders was the result of any lack of notice or other excusable neglect. Thus, it appears that his failure in this regard is willful.

      E. <u>Alternative Sanctions</u>

Plaintiff is proceeding *pro se* and *in forma pauperis* in this action. It is therefore likely that any sanction imposing costs or fees upon him would be ineffective.

      F. <u>Meritorious of the Claim or Defense</u>

Plaintiff's sole legal theory in this case is that the defendant police officers utilized excessive force against him in the course of his arrest on May 9, 2012. To state a claim for excessive use of force under the Fourth Amendment, a plaintiff must show that (1) a seizure occurred using force, and (2) the use of force was objectively unreasonable. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (citation omitted). Defendants do not dispute that they "seized" Plaintiff for purposes of the Fourth Amendment, so the key issue is whether their use of force in connection with the seizure was objectively reasonable.

In making this determination, courts consider a number of factors, including: (1) the severity of the crime; (2) whether the suspect posed an imminent threat to the safety of the officer or others; (3) whether the suspect actively resisted or attempted to evade arrest; (4) whether the force used was of such an extent as to lead to injury; (5) the possibility that the suspect was violent or dangerous; (6) the duration of the officer's action; (7) whether the action took place in the context of making an arrest; (8) the possibility that the suspect was armed; and

(9) the number of persons with whom the officer had to contend at the time. *See Graham v. Connor*, 490 U.S. 386, 396 (1989); *Woods v. Grant*, 381 F. App'x 144, 146 (3d Cir. 2010)(citations omitted); *Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir.2006)(citations omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted).

Determining whether the use of force is reasonable is largely a fact specific inquiry. *See Reiff v. Marks*, No. 08-CV-5963, 2011 WL 666139, at *5 (E.D. Pa. Feb. 23, 2011). Thus, "[t]he reasonableness of the use of force is normally an issue for the jury." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004)(citation omitted). Nonetheless, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Kopec*, 361 F.3d at 777 (internal quotation marks and citation omitted).

In his complaint, Plaintiff provides no details concerning the officers' alleged use of force, but he claims that their conduct caused "serious injury, loss of lung, and permanent disability." (Compl. ¶ IV(C), ECF No. 5.) Defendants argue that, as a matter of law, any force utilized by them in the course of regaining control of Plaintiff after he fled the scene of his arrest was reasonable. In the alternative, they argue that they are protected from liability by the doctrine of qualified immunity.

The evidentiary record in this case consists solely of the transcripts from the suppression hearing and jury trial in Plaintiff's criminal proceedings. At his suppression hearing, Plaintiff testified that, after he began running from the officers with his hands cuffed behind his back, he tripped and fell, at which point he felt the officer(s) "jump" on him and then blacked out. Suppr.

Hr'g Tr. 33:10, 34:11-15, Dec. 18, 2013 (ECF No. 41-1). Plaintiff claimed that, when he awoke a couple of seconds later, he was unable to breath, began defecating on himself, and knew that "something [was] seriously wrong." *Id*. at 34:16-20. Plaintiff further testified that he asked for, but did not receive, medical attention until he later began coughing up blood at the police station. *Id*. at 34:25-35:10. On the other hand, Officer Goss testified at trial that Plaintiff had begun sweating profusely and breathing heavily even before he attempted to flee the arrest scene. Trial Tr. 47:5-10, May 13, 2014 (ECF No. 41-2). He stated that, based on his training and experience, he believed Plainitff may have ingested some contraband prior to the traffic stop and may have been experiencing a seizure. *Id*. There is no medical evidence before the Court to establish the precise nature of Plaintiff's injuries or their cause. No depositions have been taken of any party to this case.

In sum, upon review of the present record, the Court finds the evidence concerning the officers' alleged use of force to be conflicted but also underdeveloped. Because there are potential disputes concerning material issues of historical fact, the Court cannot presently render any ruling on qualified immunity grounds. *See Monteiro v. City of Elizabeth,* 436 F.3d 397, 405 (3d Cir. 2006) ("Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury.") The evidence of record suggests that Plaintiff's excessive force claim is arguably colorable but, since the record is not fully developed and no definitive determination can be made concerning the potential merits of that claim, the sixth *Poulis* factor does not weigh either in favor of, or against, dismissal.

Notwithstanding this conclusion, the Court finds that, on balance, the *Poulis* factors as a whole *do* weigh in favor of dismissal. The Third Circuit Court of Appeals has admonished that

9

"a district court dismissing a case *sua sponte* 'should use caution in doing so because it may not have acquired knowledge of the facts it needs to make an informed decision.'" *Qadr*, 2016 WL 873784, at *2 (citing *Briscoe*, 538 F.3d at 258). Before engaging in a *sua sponte* dismissal, "the district court 'should provide the plaintiff with an opportunity to explain his reasons for failing to prosecute the case or comply with its orders." *Id*. (quoting *Briscoe*, 538 F.3d at 258). Plaintiff has been given such an opportunity in this case, but he has nevertheless failed to provide any response or explanation that would account for his repeated failures to move this litigation forward. Accordingly, a *sua sponte* dismissal of the Plaintiff's claims is warranted.

## IV. CONCLUSION

Based upon the foregoing reasons, this civil action will be dismissed with prejudice, and the Defendants' motion for summary judgment will be denied as moot. A separate Order will follow.

Dated: May 16, 2016

BY THE COURT:

/s/ Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

cc:  Sean McKinley
LR 4574
SCI Somerset
1600 Walters Mill Road
Somerset, PA 15510
*Via U.S. Mail*

Counsel of record
*Via CM/ECF*